Entered: October 27th, 2026

Signed: October 27th, 2026

**SO ORDERED**

Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the APAs. As set forth in paragraph 21, the Debtor is authorized to pay from the Retained Sale Proceeds up to $250,000 of expenses incurred by the Debtor in the ordinary course of business, but the payment of any one expense may not exceed $10,000. The Notice of Closing described in paragraph 34 will satisfy the requirements of Bankruptcy Rule 6004(f)(1)(A) and Local Bankruptcy Rule 6004-5.

MARIA ELLENA CHAVEZ-RUARK
U.S. BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**

| | | |
|---|---|---|
| | | Chapter 11 |
| | : | |
| 3CLOGIC, INC., | : | Case No. 26-17338-MCR |
| | : | |
| Debtor. | : | |
| | : | |
| | : | **Re: Docket Nos. 101, 112, 121, 135, 136** |
| ------------------------------------------------------- | x | |

**ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT WITH 3CL LLC AND THE SOFTWARE ASSET PURCHASE AGREEMENT WITH PARTNER ONE ACQUISITIONS INC., (II) AUTHORIZING THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 101] (the "**Sale Motion**") of the above-captioned debtor and debtor in possession (the "**Debtor**"), 3CLogic, Inc., for entry of an order (this "**Sale Order**") pursuant to sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), among other things, (a) authorizing and approving the sale (the "**Sale**") of substantially all of the Debtor's assets, including the India Equity Interests (as defined below) (the "**Purchased Assets**") pursuant to (i) that certain Asset Purchase Agreement dated as of September 23, 2026, by and between the Debtor, as seller, and 3CL LLC, a limited liability company (the "**Business Buyer**"), filed at Docket No. 105-1 (as modified by this Sale Order, the "**Business APA**"), and (ii) that certain Software Asset Purchase Agreement dated as of September 23, 2026, by and between the Debtor, as seller, and Partner One Acquisitions Inc., a corporation incorporated under the laws of Quebec having its registered office at 505 Maisonneuve West, Suite RC04, Montreal, Quebec, H3A-3C2 (the "**Software Buyer**" and,

together with the Business Buyer, the "**Buyers**"), filed at Docket No. 105-2 (as modified by this Sale Order, the "**Software APA**"), with the India Equity Interests to be acquired by NetWitness Security India Private Limited, a private limited company incorporated under the laws of India, having its registered office at 507, 5th Floor, Bhikaji Cama Bhawan, Bhikaji Cama Place, New Delhi – 110066, India (the "**India Buyer**"), as a Buyer Designee (as defined in the Business APA) of the Business Buyer, (b) authorizing the sale of the Purchased Assets free and clear of all liens, claims, interests, and encumbrances (other than Permitted Encumbrances (if any) and Assumed Liabilities, each as defined in, and under, the APA applicable to such Purchased Assets), (c) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale, and (d) granting related relief; and

WHEREAS, on July 9, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland (Greenbelt Division) (the "**Court**"), commencing the above-captioned bankruptcy case (the "**Bankruptcy Case**"); and

WHEREAS, the Debtor has continued to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, and no trustee, examiner, or official committee of unsecured creditors has been appointed in this Bankruptcy Case; and

WHEREAS, the Debtor is a Delaware corporation that operates a cloud-based contact center and AI-powered customer engagement software business; and

WHEREAS, on the Petition Date, the Debtor filed, among other first-day motions, a motion seeking authority to use cash collateral [Docket No. 5], and on July 16, 2026, the Court entered an Interim Order authorizing the use of cash collateral [Docket No. 27], followed by a Second Interim

Order on August 7, 2026 [Docket No. 59], a Third Interim Order on or about August 27, 2026 [Docket No. 77], and a Fourth and Final Order on or about October 6, 2026 [Docket No. 120] (collectively, the "**Cash Collateral Orders**"), each of which authorized the Debtor to use cash collateral in which RCF2, LLC (the "**Prepetition Secured Lender**") asserts a security interest, subject to certain adequate protection and other terms and conditions set forth therein; and

WHEREAS, the Debtor filed the Sale Motion seeking authority to sell substantially all of its assets to the Buyers pursuant to the Business APA and the Software APA (collectively, the "**APAs**"); and

WHEREAS, pursuant to the terms of the APAs, as modified at the Auction, the Business Buyer has agreed to pay Six Million Nine Hundred Fifteen Thousand Three Hundred Seventy-Nine Dollars ($6,915,379.00) in cash for the assets contemplated under the Business APA (of which Two Hundred Ninety-Three Thousand Nine Hundred Eighty-Nine Dollars and Thirteen Cents ($293,989.13) is allocated to the India Equity Interests and Six Million Six Hundred Twenty-One Thousand Three Hundred Eighty-Nine Dollars and Eighty-Seven Cents ($6,621,389.87) is allocated to the other Purchased Assets under the Business APA), and the Software Buyer has agreed to pay Seventeen Million Three Hundred Sixty-Six Thousand Dollars ($17,366,000.00) in cash for the Software and related assets contemplated under the Software APA, for a total aggregate cash purchase price of Twenty-Four Million Two Hundred Eighty-One Thousand Three Hundred Seventy-Nine Dollars ($24,281,379.00) (which allocation is preliminary and subject to change in accordance with Section 2.5(d) of the Business APA with any such adjustment offset against the other Purchased Assets and the total aggregate cash purchase price shall remain unchanged), plus the assumption of the Assumed Liabilities as set forth in the respective APAs (collectively, the "**Purchase Price**"); and

WHEREAS, the Court entered an Order [Docket No. 112] (the "**Bid Protections Order**") approving certain bid protections in favor of the Buyers, including break-up fees in the aggregate amount of Seven Hundred Twenty Thousand Dollars ($720,000.00); and

WHEREAS, the parties agreed upon bidding procedures which have been filed with the Court [Docket No. 135] (the "**Bidding Procedures**") for the sale of the Purchased Assets; and

WHEREAS, on October 20, 2026, the Debtor conducted the auction for the Purchased Assets (the "**Auction**") in accordance with the Bidding Procedures; and

WHEREAS, this Court reviewed and considered the results of the Auction and the Notice of Successful Bids [Docket No. 136] in connection with the Sale Hearing (as defined below); and

WHEREAS, after consultation with the applicable parties, the Debtor determined, in the exercise of its business judgment, to designate the Buyers as the highest or otherwise best bidders for the Purchased Assets contemplated by the respective APAs, and the Debtor filed the Notice of Successful Bids [Docket No. 136] announcing such designation; and

WHEREAS, on September 25, 2026, the Debtor filed a Supplemental Notice of Motion [Docket No. 109] providing additional notice of the Sale Motion and related hearing; and

WHEREAS, proper and adequate notice of the Sale Motion, the APAs, and the Sale Hearing (as defined below) was given to all parties entitled to notice in accordance with Bankruptcy Rules 2002, 6004, and 6006, and the Local Bankruptcy Rules for the District of Maryland, including Local Bankruptcy Rules 2002-1 and 6004-1, and such notice was sufficient under the circumstances; and

WHEREAS, this Court conducted a hearing on October 22, 2026 to consider approval of the Sale (the "**Sale Hearing**"); and

WHEREAS, this Court having reviewed and considered (i) the Sale Motion and the exhibits thereto, (ii) the Business APA and the Software APA, (iii) the declarations and evidence submitted in support thereof, (iv) the arguments and representations of counsel made, and the evidence proffered or adduced at, the Sale Hearing, (v) the record of these proceedings, and (vi) any objections filed to the Sale Motion, and this Court having found that all such objections and reservations of rights, to the extent not otherwise withdrawn, waived, or settled, should be overruled on the merits; and

WHEREAS, all parties in interest have been heard or have had the opportunity to be heard regarding approval of the Sale and the relief requested in the Sale Motion and provided in this Sale Order; and

WHEREAS, for the reasons stated on the record at the Sale Hearing and as set forth below, the Court has determined that the relief requested in the Sale Motion and provided in this Sale Order is in the best interests of the Debtor, its estate, its creditors, and all parties in interest; and

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[1]

A. **Jurisdiction and Venue.** This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

B. **Statutory and Legal Predicates.** The statutory and legal predicates for the relief requested in the Sale Motion are sections 105, 363, and 365 of the Bankruptcy Code. Such relief

[1] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by this Court at the Sale Hearing are hereby incorporated to the extent not inconsistent herewith.

is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, and 9014, and the Local Bankruptcy Rules for the District of Maryland, including Local Bankruptcy Rules 2002-1, 6004-1, and 9013-1. This Sale Order complies with all applicable standing orders of this Court.

C. **Final Order.** This Sale Order is intended to constitute a final and appealable order within the meaning of 28 U.S.C. § 158(a). Time is of the essence in closing the Sale contemplated herein; the Debtor and the Buyers intend to close the Sale as soon as practicable, and there is no just reason for delay in implementing this Sale Order. The Sale must be approved and consummated promptly to preserve the value of the Purchased Assets for the benefit of the Debtor's estate and its creditors. Accordingly, pursuant to Bankruptcy Rules 6004(h) and 6006(d), the Court finds good cause to waive the fourteen (14) day stays contemplated thereby, and this Sale Order shall be effective and enforceable immediately upon entry. *See* Fed. R. Bankr. P. 6004(h), 6006(d).

D. **Case Background and Notice.** On July 9, 2026, the Debtor commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has continued to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed in the Bankruptcy Case.

E. The Debtor, with the consent of the Prepetition Secured Lender, has operated its business pursuant to the Cash Collateral Orders, which have provided adequate protection to the Prepetition Secured Lender during the pendency of this Bankruptcy Case and the sale process.

F. The Debtor gave proper notice of the Sale Motion, the APAs, and the Sale Hearing in accordance with Bankruptcy Rules 2002, 6004, and 6006, and the Local Bankruptcy Rules for

the District of Maryland, including Local Bankruptcy Rules 2002-1 and 6004-1. Such notice was adequate and sufficient under the circumstances, and no other or further notice need be given with respect to the Sale.

G. As evidenced by the certificates of service filed with this Court and the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Sale Motion, the APAs, this Sale Order, and the Sale (collectively, the "**Sale Transaction**") has been provided in accordance with sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and the Local Bankruptcy Rules for the District of Maryland, including Local Bankruptcy Rules 2002-1, 6004-1, and 9013-1.

H. A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion and provided in this Sale Order was afforded to all parties in interest, including, without limitation: (i) all creditors of the Debtor; (ii) the Office of the United States Trustee for the District of Maryland; (iii) all parties who have asserted liens or security interests against any of the Purchased Assets; (iv) all counterparties to executory contracts and unexpired leases and all licensees of the Software (as defined in the Software APA); (v) all federal, state, and local governmental authorities having regulatory or taxing authority over the Debtor's business or the Purchased Assets; (vi) all parties who have filed notices of appearance in the Bankruptcy Case; and (vii) the Prepetition Secured Lender.

I. **Marketing and Sale Process.** The Debtor has conducted an appropriate marketing process for the Purchased Assets. The Debtor and its professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bidding Procedures, and in accordance with the Debtor's fiduciary duties. The sale process was conducted in good faith, with adequate and reasonable notice to all parties in interest, and in a manner designed to maximize

the value of the Debtor's estate. Creditors, other parties in interest, and prospective purchasers were afforded a reasonable and fair opportunity to submit bids for the Purchased Assets.

J. The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Purchased Assets. The Debtor conducted the sale process without collusion, in compliance with the Bidding Procedures, and in accordance with the Debtor's fiduciary duties to maximize the value of its estate. On October 20, 2026, the Debtor conducted the Auction in accordance with the Bidding Procedures. Each bidder qualified under the Bidding Procedures participating in the Auction was required to confirm, on the record at the Auction, that it had not engaged in any collusion with respect to the bidding process and that its bid was a good faith bona fide offer. All creditors, parties in interest, and prospective purchasers were afforded a full and fair opportunity to participate in the Auction and to submit competing bids for the Purchased Assets, and the Auction was conducted fairly, openly, in good faith, and without collusion. At the conclusion of the Auction, the Buyers were designated as the Successful Bidders for the applicable Purchased Assets, and the APAs were determined to represent the highest or otherwise best offers for the Purchased Assets.

K. The Buyers are designated as the Successful Bidders, and each applicable APA is designated as the Successful Bid for the Purchased Assets contemplated thereby, in accordance with the Bidding Procedures.

L. The APAs, including the form and total consideration to be realized by the Debtor under the APAs in the aggregate cash amount of Twenty-Four Million Two Hundred Eighty-One Thousand Three Hundred Seventy-Nine Dollars ($24,281,379.00), plus the assumption of the

Assumed Liabilities, (a) constitute the highest or otherwise best offers received by the Debtor for the Purchased Assets, and (b) are fair and reasonable.

M. **Business Judgment.** The Debtor's determination that the consideration provided by the Buyers under the APAs constitutes the highest or otherwise best offer for the Purchased Assets is reasonable and constitutes a valid and sound exercise of the Debtor's business judgment.

N. The Debtor has demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale Transaction and the performance of the Debtor's obligations under the APAs, including, but not limited to, the fact that (a) the consideration provided by the Buyers under the APAs will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative, including a liquidation of the Purchased Assets; (b) unless the Sale Transaction is concluded expeditiously, the value of the Purchased Assets will diminish; and (c) the Sale Transaction is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

O. **Notice of Assumption and Assignment.** Upon compliance with the procedures set forth in paragraphs 19 and 20 of this Sale Order, the Debtor will have provided adequate notice of the potential assumption and assignment of executory contracts and unexpired leases in connection with the Sale Transaction, including proposed cure amounts, to all counterparties to such contracts and leases.

P. With respect to each of the Assigned Contracts (as defined in the applicable APA), the Debtor has met all requirements of sections 365(a) and 365(b) of the Bankruptcy Code. Further, in compliance with the requirements of sections 365(b) and 365(f) of the Bankruptcy Code, the applicable Buyer and its Buyer Designees have provided adequate assurance of future performance under the Assigned Contracts to the extent that any such assurance is required and

not waived by the counterparties to such Assigned Contracts. Accordingly, the Assigned Contracts may be assumed by the Debtor and assigned to the applicable Buyer or its Buyer Designees as provided for in the APAs and this Sale Order.

Q. **Good Faith.** The sale process engaged in by the Debtor and the Buyers was conducted in accordance with the Bidding Procedures, and the negotiation of the APAs was conducted at arm's length, was non-collusive, was in good faith, and was substantively and procedurally fair to all parties in interest. Neither the Debtor nor any Buyer has engaged in any conduct that would cause or permit the APAs or the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

R. The Debtor and each Buyer have complied, in good faith, in all respects with the sale process. Each Buyer acted in good faith and without collusion or fraud of any kind in connection with the Sale Transaction. Each Buyer submitted its bid to competitive bidding in accordance with the Bidding Procedures and was designated the Successful Bidder for the applicable Purchased Assets in accordance with the Bidding Procedures.

S. Each Buyer and its Buyer Designees are good faith purchasers within the meaning of section 363(m) of the Bankruptcy Code and are therefore entitled to the full protection of that provision in respect of the Sale Transaction and each term of the applicable APA (and any ancillary documents executed in connection therewith) and each term of this Sale Order, and otherwise have proceeded in good faith in all respects in connection with this proceeding. Neither the Debtor nor any Buyer or Buyer Designee has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code. The Debtor was free to deal with any other party interested in purchasing some or all of the Purchased Assets on behalf of the Debtor's estate. The reversal or modification on appeal of this Sale Order shall not affect the validity of the Sale to the Buyers and

their Buyer Designees (including the sale of the Purchased Assets and the assumption and assignment of the Assigned Contracts to the Buyers and their Buyer Designees). The mootness protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale Transaction, and the Buyers would not consummate the Sale Transaction without such protections.

T. The form and total consideration to be realized by the Debtor under the APAs constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Purchased Assets.

U. **Title in the Purchased Assets**. The Purchased Assets constitute property of the Debtor's estate, and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. The Debtor is the sole and lawful owner of the Purchased Assets.

V. **Buyers Are Not Insiders.** Neither the Business Buyer nor the Software Buyer, nor any of their respective affiliates, officers, directors, managers, shareholders, members, or any of their respective successors or assigns, is an "insider" of the Debtor, as that term is defined under section 101(31) of the Bankruptcy Code. No common identity of directors, managers, controlling shareholders, or members exists between the Debtor and either Buyer.

W. **No Fraudulent Transfer.** The consideration provided by the Buyers for the Purchased Assets pursuant to the APAs (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Purchased Assets, (c) will provide a greater recovery for the Debtor's creditors and estate than would be provided by any other practicably available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof, and the District of Columbia.

X. The APAs were not entered into, and neither the Debtor nor any Buyer has entered into the APAs or proposes to consummate the Sale Transaction, for the purpose of (a) escaping liability for any of the Debtor's debts, or (b) hindering, delaying, or defrauding the Debtor's present or future creditors, for purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable jurisdiction.

Y. **Free and Clear.** The transfer of the Purchased Assets to the applicable Buyer or its Buyer Designees will be a legal, valid, and effective transfer of the Purchased Assets and will vest such Buyer or such Buyer Designees, as applicable, with all right, title, and interest of the Debtor in and to the Purchased Assets free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever against the Debtor, its predecessors, affiliates, or the Purchased Assets (collectively, "**Encumbrances**"), other than Permitted Encumbrances (if any) and Assumed Liabilities (each as defined in, and under, the APA applicable to such Purchased Assets), including, without limitation: (a) all mortgages, deeds of trust, security interests, pledges, hypothecations, charges, indentures, loan agreements, instruments, conditional sale rights, title-retention agreements, liens, judgments, attachments, levies, easements, servitudes, licenses, sublicenses, leases, subleases, options, rights of first refusal, consent rights, restrictions, covenants, royalties, rights of recovery, rights of reclamation, reclamation claims, rights of setoff, offsets, rights of recoupment, contract rights, and other rights or interests in or against the Purchased Assets; (b) all claims, including any and all "claims" as defined in section 101(5) of the Bankruptcy Code, demands, causes of action, actions, suits, defenses, guaranties, obligations, liabilities, debts, rights to payment, rights to performance, reimbursement rights, contribution claims, indemnity rights, exoneration rights, subrogation rights, alter-ego claims, product liability

claims, and environmental claims and liabilities; (c) all liens, including any and all "liens" as defined in section 101(37) of the Bankruptcy Code, and all statutory, mechanic's, builders', materialmen's, tax, judgment, attachment, or similar liens on real or personal property; (d) all debts, obligations, liabilities, claims, interests, rights, and encumbrances arising under, out of, in connection with, or in any way relating to any acts, failures to act, or omissions of the Debtor or any of its predecessors or affiliates, the ownership, use, operation, or sale of the Purchased Assets, or the Debtor's business before the applicable Closing; (e) all labor, employment, and employee-benefit claims and liabilities, including claims arising under or relating to ERISA, WARN, COBRA, the Fair Labor Standards Act, the National Labor Relations Act, any multiemployer pension plan, collective bargaining agreement, pension or retirement plan, retiree healthcare or life insurance claim, severance, wages, bonuses, commissions, vacation, sick pay, unemployment, workers' compensation, discrimination, harassment, retaliation, unfair labor practice, or any other federal, state, local, or foreign employment or labor statute, law, rule, regulation, plan, or agreement; (f) all tax claims, regulatory violations, environmental rights and claims (including toxic tort claims), antitrust claims, bulk sales claims, decrees, orders, charges, penalties, and liabilities of any court or governmental entity; (g) all successor liability, transferee liability, derivative liability, vicarious liability, de facto merger liability, continuation liability, substantial continuity liability, mere continuation liability, and similar claims or theories of liability; and (h) all other matters, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, direct or indirect, senior or subordinated, material or non-material, statutory or non-statutory, asserted or unasserted, whether arising before or after the

commencement of the Bankruptcy Case or before the applicable Closing, and whether imposed by agreement, understanding, law, equity, or otherwise.

Z. **Validity of Equity Transfer.** The India Equity Interests constitute property of the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. The Debtor has good and transferable title to the India Equity Interests. Upon the Closing under the Business APA, the transfer of the India Equity Interests to the India Buyer will be a legal, valid, and effective transfer of the India Equity Interests and will vest the India Buyer, as Buyer Designee of the Business Buyer, with all right, title, and interest of the Debtor in and to the India Equity Interests, free and clear of all Encumbrances, other than transfer restrictions under applicable securities laws, in each case as set forth in the Business APA.

AA. The Debtor may sell the Purchased Assets free and clear of all Encumbrances because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Sale Motion or the Sale, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such holders allege Encumbrances, in the same order of priority, with the same validity, force, and effect that such holders had prior to the Sale, subject to any rights, claims, and defenses the Debtor or its estate, as applicable, may possess with respect thereto.

BB. **Validity of Transfer.** The APAs were negotiated and entered into at arm's length and in good faith by the Debtor and each Buyer. The Sale Transaction does not amount to a

consolidation, merger, or de facto merger of the Debtor and any Buyer. Neither Buyer is a mere continuation, successor, or alter ego of the Debtor. Neither Buyer will assume or be bound by any liabilities of the Debtor (other than the Assumed Liabilities), and no Buyer is purchasing all of the Debtor's assets or any specific fund out of which any creditor could be paid. The Sale Transaction is not being undertaken for fraudulent purposes, nor is it intended to strip the Debtor of assets to defeat creditors.

CC. **No Successor Liability.** Neither Buyer desires or intends to acquire any interest in any assets other than the Purchased Assets (including, in the case of the Business Buyer, the India Equity Interests) to be purchased by such Buyer under the applicable APA, or to assume or be liable for any liabilities of the Debtor except the Assumed Liabilities. Neither Buyer is purchasing all of the Debtor's assets. Neither the Sale Transaction nor any of the APAs was entered into for the purpose of escaping liability for any of the Debtor's debts, nor did the Debtor enter into the APAs or engage in the Sale Transaction to place assets beyond the reach of its creditors. Neither Buyer shall be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets, or the assignment of the Assigned Contracts, or any other provision of this Sale Order, to (a) be a legal successor, or otherwise be deemed a successor to the Debtor (other than with respect to the Assumed Liabilities and to the extent provided by the applicable APA), (b) have, de facto or otherwise, merged with or into the Debtor, or (c) be a mere continuation, substantial continuation, or successor of the Debtor or the Debtor's estate.

DD. There is no legal or equitable basis or doctrine under any federal, state, or local law, including, without limitation, any bulk sales law or any successor or transferee liability law, for holding either Buyer (or any affiliates, shareholders, members, officers, directors, employees, agents, successors, or assigns thereof) responsible for any of the Debtor's liabilities (other than as

expressly set forth in the applicable APA with respect to the Assumed Liabilities), including successor liability, transferee liability, labor law, de facto merger, express or implied assumption, or any other theory of law or equity, including, without limitation, as a successor to the Debtor.

EE. **Satisfaction of Section 363(f) Requirements.** The Debtor has satisfied all of the requirements of section 363(f) of the Bankruptcy Code. All holders of Encumbrances (a) have consented to the sale of the Purchased Assets free and clear of all Encumbrances, (b) have failed to object to the Sale, (c) could be compelled in a legal or equitable proceeding to accept a money satisfaction of the interests held by such holders, or (d) otherwise fall within the provisions of section 363(f) of the Bankruptcy Code.

FF. **No Requirement for Further Consents.** Other than any consents or approvals obtained prior to the Sale Hearing, no consent or approval of any person or entity is required in connection with the sale of the Purchased Assets and the consummation of the Sale Transaction.

GG. **APAs Fair and Reasonable.** The APAs and each of their terms, provisions, covenants, and conditions are fair and reasonable. The APAs and the Sale Transaction contemplated thereby, including all terms, provisions, covenants, and conditions set forth therein, were negotiated, proposed, and entered into by the Debtor and the Buyers without collusion, in good faith, and from arm's-length bargaining positions.

HH. **Legal and Factual Bases.** The legal and factual bases set forth in the Sale Motion and presented at the Sale Hearing establish just cause for the relief granted herein.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. **Approval of the Sale.** The Sale Motion and the relief requested therein are hereby approved and granted, as further provided herein, and all objections and reservations of rights that

have not been withdrawn, waived, or settled, and all statements or requests included therein, are overruled on the merits for the reasons stated on the record.

2. **Approval of the APAs.** The APAs are hereby approved in all respects and deemed binding upon the Debtor and the Buyers and their respective successors and assigns. The Debtor is authorized to execute, deliver, and perform under the APAs and to consummate all transactions contemplated thereby, subject to and in accordance with the terms and conditions set forth therein. The Debtor and the Buyers are authorized to execute and deliver, and empowered to perform under, implement, and close, the Sale Transaction in accordance with the terms and conditions of the APAs. The execution, delivery, performance, and consummation of the APAs and the Sale Transaction are hereby authorized pursuant to sections 105, 363, and 365 of the Bankruptcy Code.

3. **Acquisition and Transfer of India Equity Interests.** Pursuant to the Business APA and sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the India Buyer, as Buyer Designee of the Business Buyer, shall acquire, and the Debtor is authorized and directed to sell, assign, transfer, convey, and deliver to the India Buyer at the applicable Closing, all of the Debtor's right, title, and interest in and to all of the issued and outstanding equity interests, shares, and other ownership interests (collectively, the "**India Equity Interests**," which constitute the "Acquired Equity" under the Business APA) of 3CLogic Technologies Private Limited, a private limited company organized under the laws of India bearing Corporate Identity Number U30007UP2006PTC132289 and the Debtor's wholly owned subsidiary (the "**India Subsidiary**"). Upon the applicable Closing, such transfer shall (a) constitute a legal, valid, and effective transfer of the India Equity Interests to the India Buyer, free and clear of all Encumbrances, other than transfer restrictions under applicable securities laws, and (b) vest the India Buyer with all right, title, and interest of the Debtor in and to the India Equity Interests. The Debtor shall deliver, or

cause to be delivered, all instruments and documents necessary to effect the transfer of the India Equity Interests without further order of this Court, including, without limitation, (A) a scanned copy of the duly executed and undated depository instruction slip, or any equivalent document thereof as applicable, in agreed form with the Business Buyer, for the transfer of the India Equity Interests from the demat account of the Debtor to the demat account maintained by the India Buyer, (B) a certified true copy of resolutions passed by the board of directors of the India Subsidiary to take on record, note and approve the sale of the India Equity Interests by the Debtor to the India Buyer, (C) a certified true copy of resolutions passed by the board of directors of the India Subsidiary to authorize the recording of the India Buyer's name as the sole legal and beneficial owner of the India Equity Interests in the register of members, register of beneficial ownership and/or the beneficial ownership statement of the India Subsidiary, (D) the debit statement of the Debtor's demat account evidencing debit of the India Equity Interests from the Debtor's demat account; and (E) any share purchase or share transfer agreement between the Debtor and the India Buyer implementing the transfer of the India Equity Interests in accordance with the Business APA (the "**India SPA**"), which India SPA shall constitute an Ancillary Agreement and a Transfer Document for all purposes of this Sale Order.

4. Notwithstanding anything to the contrary in this Sale Order or the Business APA, only the India Equity Interests sold by the Debtor are transferred free and clear of Encumbrances pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code. Assets held within the India Subsidiary (or any subsidiary thereof) are not sold free and clear of any Encumbrances, and any valid Encumbrances on assets within the India Subsidiary (or any subsidiary thereof) shall continue in full force and effect. Any restrictions on the transfer, use, voting, receipt of income,

or other attributes of ownership of the India Equity Interests shall be limited to those arising under applicable securities laws.

5. **<u>Best Efforts to Close.</u>** Notwithstanding anything to the contrary in the APAs, the Debtor and each Buyer shall use their best efforts to cause the applicable Closing to occur on or before 11:59 p.m. (prevailing Eastern Time) on October 30, 2026 (the "**<u>Target Closing Time</u>**"), but in no event later than November 10, 2026 (as such date may be extended by the applicable Buyer pursuant to paragraph 6 of this Sale Order). If the applicable Closing has not occurred by the Target Closing Time for any reason (other than as a result of the applicable Buyer's default), all cash collected by the Debtor and the India Subsidiary (collectively, the "**<u>Seller Group</u>**") from and after the Target Closing Time until such Closing occurs that is attributable to the Purchased Assets to be acquired by such Buyer shall be the property of such Buyer, and the Seller Group shall hold such cash in trust for, and remit it to, such Buyer at such Closing. If the applicable Closing occurs after the Target Closing Time as a result of the applicable Buyer's default, the Debtor shall retain all such cash attributable to the Purchased Assets to be acquired by such Buyer.

6. **<u>Termination Date.</u>** Notwithstanding anything to the contrary in the APAs, including, without limitation, the definition of "Termination Date" in each APA, the Termination Date under each APA shall be November 10, 2026; *provided*, *however*, that the applicable Buyer may, with the consent of the Debtor, extend the Termination Date under its APA from time to time by written notice to the Debtor, without further order of this Court. If the Closing under an APA has not occurred by the Termination Date under such APA (as it may be so extended) as a result of actions or inactions by the Debtor, the applicable Buyer may, at its sole option, terminate its APA by written notice to the Debtor, and upon such termination the Debtor shall promptly

return, or cause to be returned, such Buyer's Deposit (as defined in the applicable APA), if any, to such Buyer, without setoff, deduction, or further order of this Court.

7. **Transfer of Purchased Assets.** Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized and directed to transfer the Purchased Assets (including, in the case of the Business Buyer, the India Equity Interests) to the applicable Buyer or its Buyer Designees (as defined in the applicable APA), and, upon the applicable Closing, such transfer shall (a) constitute a legal, valid, and effective transfer of the Purchased Assets to such Buyer or its Buyer Designees, and (b) vest such Buyer or its Buyer Designees, as applicable, with all right, title, and interest of the Debtor in and to the Purchased Assets.

8. **Free and Clear of Encumbrances.** Except for the Permitted Encumbrances and Assumed Liabilities under the APA applicable to the relevant Purchased Assets, all persons and entities holding or asserting Encumbrances of any kind or nature whatsoever against the Debtor or in any of the Purchased Assets are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Encumbrances against the Buyers or their respective affiliates, successors, assigns, Buyer Designees, properties, or assets, or against any of the Purchased Assets, and no such persons or entities may interfere with the Buyers' title to or use and enjoyment of the Purchased Assets, or seek to recover any amounts in connection therewith, based upon any actions of the Debtor, claims against the Debtor, or Encumbrances against any of the Purchased Assets. Upon the applicable Closing, the Purchased Assets shall be transferred to the applicable Buyer or its Buyer Designees free and clear of all Encumbrances, pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, with all such Encumbrances to attach to the proceeds of the Sale ultimately attributable to the Purchased Assets, in the order of their priority, with the same validity, force, and effect, and to the same extent, that

such Encumbrances had prior to the Sale, subject to any claims and defenses the Debtor, its estate, or any party in interest may possess with respect thereto. The transfer of the Purchased Assets free and clear of all Encumbrances shall be self-executing, and neither the Debtor nor the Buyers shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement such transfer.

9. **Good Faith.** The transactions contemplated by the APAs are undertaken by each Buyer and its Buyer Designees in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Buyers and their Buyer Designees (including the sale of the Purchased Assets and the assumption and assignment of the Assigned Contracts to the Buyers and their Buyer Designees), unless such authorization is duly stayed pending such appeal. Each Buyer and its Buyer Designees are good faith buyers within the meaning of section 363(m) of the Bankruptcy Code and, as such, are entitled to the full protection of section 363(m) of the Bankruptcy Code.

10. **No Successor Liability.** Neither Buyer nor any of its Buyer Designees shall be deemed, as a result of any action taken in connection with the acquisition of the Purchased Assets, the assumption or assignment of the Assigned Contracts, or any other provision of this Sale Order, to (a) be a legal successor, or otherwise be deemed a successor to the Debtor (other than with respect to the Assumed Liabilities), (b) have, de facto or otherwise, merged with or into the Debtor, or (c) be a mere continuation, substantial continuation, or successor of the Debtor or the Debtor's estate. The transfer of the Purchased Assets to the Buyers shall not result in (i) either Buyer or any of their respective affiliates, successors, assigns, or Buyer Designees having any liability or responsibility for any Encumbrance against, or any liability or obligation of, the Debtor

(including successor or vicarious liabilities of any kind or character whether known or unknown as of the applicable Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor, any of the Purchased Assets, or any conduct, liability, obligation, or inaction occurring or arising at any time before such Closing), except as expressly set forth in the applicable APA, or (ii) either Buyer or any of their respective affiliates, successors, assigns, or Buyer Designees being a "successor" or "successor employer" for any purpose to the Debtor or its estate, including, without limitation, to the greatest degree allowed by applicable law, for purposes of WARN (29 U.S.C. §§ 2101 et seq.), CERCLA, ERISA, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination in Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, or any federal, state, local, or foreign revenue, pension, employment, employee benefit, products liability, environmental, or other law or any theory (including, without limitation, equitable or tort theories) of successor, transferee, or vicarious liability.

11. Upon the Closing under the Business APA, the Business Buyer shall be, and be deemed to be, a new employer with respect to all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws. Neither the Business Buyer nor any of its affiliates shall have any common law successorship liability or controlled group liability in relation to any employee benefit plans, including, without limitation, with respect to withdrawal liability or contribution obligations, or be liable for any acts or omissions of the Debtor, except as expressly set forth in the Business APA. Nothing in this paragraph shall limit, release, or otherwise affect any liabilities expressly assumed by the Business Buyer pursuant to the terms of the Business APA.

12. Neither Buyer nor any of its Buyer Designees shall have any liability or obligation under any successor or transferee liability, de facto merger, substantial continuity, or similar theories (collectively, "**Successor or Transferee Liability**") arising out of or related to any liability of the Debtor or the Debtor's predecessors-in-interest. Except as expressly set forth in the applicable APA, neither Buyer nor any of their respective affiliates, successors, assigns, or Buyer Designees shall assume, be responsible for, or be liable for any debt, liability, claim, or obligation of the Debtor, whether arising before, on, or after the Petition Date, and whether imposed by agreement, law, or equity, including, without limitation, any liability arising from: (a) any employment agreements, collective bargaining agreements, supplemental unemployment benefit plans, pension or retirement plans, vacation plans, sick pay, health care or employee benefit plans of any nature, claims of employment discrimination or unfair labor practices, wages, bonuses, commissions, or other claims arising out of or relating to the employment relationship, including workers' compensation claims; (b) any environmental liabilities, claims, or obligations, including claims under CERCLA, RCRA, or any other federal, state, or local environmental laws or regulations; (c) any tax liability, including income, franchise, sales, use, withholding, payroll, transfer, or other taxes, interest, additions to tax, or penalties; (d) any products liability claim, personal injury claim, or warranty claim relating to products manufactured, sold, or distributed by the Debtor prior to the applicable Closing; (e) any claim for indemnification or contribution arising from any contractual obligation of the Debtor; or (f) any other claim or liability of the Debtor, whether known or unknown as of the applicable Closing, now existing or hereafter arising, whether fixed or contingent, secured or unsecured. The Buyers would not have acquired the Purchased Assets but for the foregoing protections against Successor or Transferee Liability.

13. **<u>India Equity — No Successor or Transferee Liability.</u>** Each of the Business Buyer and its Buyer Designees (including the India Buyer) (i) is not, and shall not be deemed, a successor in interest or successor employer to the Debtor with respect to the India Subsidiary; (ii) has not, de facto or otherwise, merged or consolidated with or into the Debtor or the India Subsidiary; (iii) is not a continuation or substantial continuation of the Debtor or any enterprise of the Debtor; and (iv) is not holding itself out to the public as a continuation of the Debtor. The transfer of the India Equity Interests to the India Buyer shall not result in (A) the Business Buyer or any of its affiliates, successors, assigns, or Buyer Designees (including the India Buyer) having any liability or responsibility for any Encumbrance against, or any liability or obligation of, the Debtor or the India Subsidiary (including successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing under the Business APA, now existing or hereafter arising, whether fixed or contingent, with respect to the India Subsidiary, the India Equity Interests, or any conduct, liability, obligation, or inaction occurring or arising at any time before such Closing), except as expressly set forth in the Business APA; or (B) the Business Buyer, any Buyer Designee (including the India Buyer), or any of their respective affiliates being a "successor employer" for any purpose, including under any federal or state unemployment laws, under the Provident Fund, Employees' State Insurance, Gratuity, or any other statutory employee benefit scheme of India, or under the Industrial Disputes Act, 1947, or any other applicable Indian labor or employment law. Neither the Business Buyer nor any of its Buyer Designees (including the India Buyer, as the new parent of the India Subsidiary) nor any of their respective affiliates (other than the India Subsidiary) shall be liable for any employment-related claims, liabilities, or obligations of the Debtor or the India Subsidiary accruing prior to such Closing, except as expressly set forth in the Business APA.

14. **Buyer Designees.** Each Buyer Designee (as defined in the applicable APA), including the India Buyer, shall be entitled to, and is hereby granted, all of the rights, protections, findings, and provisions in favor of the applicable Buyer contained in this Sale Order, including, without limitation, the protections of section 363(m) of the Bankruptcy Code, the transfer of the Purchased Assets free and clear of all Encumbrances, and the findings and provisions that no Buyer Designee is a successor to the Debtor or liable for any Excluded Liability. References in this Sale Order to a "Buyer" or the "Buyers" shall include each applicable Buyer Designee unless the context clearly requires otherwise.

15. **Authorization to Perform.** The Debtor is authorized and empowered to take any and all actions, and to execute, acknowledge, and deliver any and all documents, instruments, and agreements, that the Debtor deems necessary or appropriate to effectuate the Sale Transaction contemplated by the APAs and this Sale Order, all without further order of this Court. This Sale Order is and shall be binding upon and govern the acts of all entities, including all filing agents, title companies, recorders of mortgages, recorders of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, and secretaries of state, and each such person is hereby authorized and directed to accept for filing any documents and instruments necessary to consummate the Sale Transaction.

16. The Debtor and the Buyers are authorized to execute and deliver such ancillary documents, instruments, and agreements as the Debtor and the Buyers, in their reasonable discretion, deem necessary or appropriate to consummate the Sale Transaction, including, without limitation, bills of sale, assignment and assumption agreements, intellectual property assignments, vehicle titles, and other transfer documents (collectively, the "**Transfer Documents**"), and to take

such other actions as the Debtor and the Buyers deem necessary or appropriate to effectuate the provisions of this Sale Order and the APAs, all without further order of this Court.

17. **Non-Material Modifications.** The APAs and any of the documents or agreements related thereto may be modified, amended, or supplemented by the Buyers with the consent of the Debtor, without further order of this Court, provided that any such modification, amendment, or supplement is not materially adverse to the Debtor's estate and does not require further Court approval under applicable law. Any modification, amendment, or supplement which is materially adverse to the Debtor's estate shall require approval of this Court.

18. **Substitution of Affiliate Purchaser.** Each Buyer may, at or before the applicable Closing, designate one or more of its affiliates to be substituted as the purchaser under its APA, pursuant to an amendment to such APA executed by the Debtor and such Buyer (an "**Amended APA**"), without further notice, hearing, or order of this Court; *provided* that (a) such Amended APA does not reduce the Purchase Price or otherwise modify the terms of the applicable APA in a manner materially adverse to the Debtor's estate; and (b) the substituting affiliate assumes all of the obligations of the applicable Buyer under the applicable APA and this Sale Order. Upon such substitution, the substituting affiliate shall be deemed a "Buyer" for all purposes of this Sale Order and shall be entitled to all of the rights, protections, and findings in favor of the applicable Buyer hereunder, including, without limitation, the protections of section 363(m) of the Bankruptcy Code, and all references to the applicable APA herein shall be deemed references to such Amended APA.

19. **Assumption and Assignment of Contracts.** Subject to and conditioned upon the applicable Closing, and pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtor is authorized to assume and assign to the applicable Buyer or its Buyer Designees, and the applicable

Buyer or its Buyer Designees shall be authorized to take assignment of, the Assigned Contracts identified on the list of Assigned Contracts set forth on Schedule 1 attached hereto (as the same may be modified, amended, or supplemented in accordance with the applicable APA and this Sale Order, the "**Assigned Contract List**"), free and clear of all Encumbrances. The Assigned Contract List attached hereto is subject to modification, amendment, and supplementation in accordance with the applicable APA and this Sale Order; *provided*, *however*, that, subject to the foregoing, the Cure Amounts shall be determined in accordance with the procedures set forth in the paragraph of this Sale Order captioned "Cure Notice and Objection Procedures; Supplementation" (the "**Cure Procedures**"), notwithstanding anything to the contrary in the APAs. Upon completion of the applicable Cure Procedures with respect to an Assigned Contract on the Assigned Contract List, as provided in the Cure Procedures, (i) the assumption and assignment of such Assigned Contract to the applicable Buyer and its Buyer Designees shall be legal, valid, and effective, (ii) pursuant to section 365(f) of the Bankruptcy Code, any provision in such Assigned Contract that prohibits, restricts, or conditions the assignment of such Assigned Contract, or that permits termination, modification, or the exercise of any right or remedy upon such assignment, shall be unenforceable and of no force or effect with respect to the assumption and assignment authorized hereby, and (iii) the requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code, including the provision of adequate assurance of future performance by the applicable Buyer and its Buyer Designees, will be deemed satisfied with respect to such Assigned Contract. Notwithstanding anything to the contrary in the APAs, no Cure Amount shall be paid at or in connection with any Closing. The Debtor shall pay the Cure Amount (as defined in the applicable APA) with respect to each Assigned Contract, as finally determined pursuant to the Cure Procedures, within five (5) days following the completion of the applicable Cure Procedures with

respect to such Assigned Contract, and such payment shall constitute a full and final satisfaction of all amounts required to be paid under section 365(b)(1) of the Bankruptcy Code in connection with the assumption and assignment of such Assigned Contract; any counterparty to an Assigned Contract that has not timely objected to its Cure Amount in accordance with the Cure Procedures shall be deemed to have consented thereto and is forever barred from asserting any other or additional cure amounts, claims, defaults, breaches, or pecuniary losses against the Debtor, the applicable Buyer, or any Buyer Designee arising under or related to such Assigned Contract existing as of the date of completion of the applicable Cure Procedures.

20. **Cure Notice and Objection Procedures; Supplementation.** (a) On or prior to the applicable Closing, the Debtor shall file on the docket of the Bankruptcy Case and serve on each counterparty to an Assigned Contract on the Assigned Contract List a notice setting forth the proposed Cure Amount for each such Assigned Contract (each, a "**Cure Notice**"). Each counterparty shall have twenty-one (21) days after the filing of the applicable Cure Notice (the "**Cure Objection Deadline**") to file with this Court and serve on the Debtor and the applicable Buyer a written objection to its respective Cure Amount (a "**Cure Objection**"), which Cure Objection shall state with specificity the cure amount asserted by such counterparty and the legal and factual basis therefor, together with appropriate supporting documentation. (b) If a Cure Objection is timely filed and served, the Debtor (in consultation with the applicable Buyer) and the objecting counterparty shall confer and negotiate in good faith to resolve such Cure Objection consensually, and any such consensual resolution may be documented by stipulation filed on the docket without further order of this Court. Any Cure Objection that is not so resolved within twenty-one (21) days after the Cure Objection Deadline, or such later date as the Debtor, the applicable Buyer, and the objecting counterparty may agree in writing, shall be submitted to this

Court for determination at a hearing scheduled on not less than fourteen (14) days' notice. Pending completion of the Cure Procedures with respect to an Assigned Contract that is subject to a Cure Objection, (i) the counterparty shall continue to perform under such Assigned Contract in accordance with its terms, and (ii) the Debtor shall hold such Assigned Contract for the benefit of the applicable Buyer, and the applicable Buyer shall be entitled to the benefits of, and shall perform and pay when due all obligations arising under, such Assigned Contract from and after the applicable Closing. The pendency of a Cure Objection shall not prevent or delay the applicable Closing or the assumption and assignment of any other Assigned Contract. (c) If no Cure Objection is timely filed and served by the Cure Objection Deadline with respect to an Assigned Contract, the Cure Amount set forth in the applicable Cure Notice shall be final and binding on the Debtor, its estate, the applicable Buyer and its Buyer Designees, the applicable counterparty, and all other parties in interest, without further notice, hearing, or order of this Court. If a Cure Objection is timely filed and served, the Cure Amount, as resolved by consensual resolution documented as provided in clause (b) above or as determined by final order of this Court, shall be final and binding on the same parties upon such resolution or the entry of such final order. For all purposes of this Sale Order, the Cure Procedures with respect to an Assigned Contract shall be deemed completed, and the assumption and assignment of such Assigned Contract to the applicable Buyer or its Buyer Designees shall become effective, (i) if no Cure Objection is timely filed and served with respect to such Assigned Contract, upon the expiration of the twenty-one (21) day Cure Objection Deadline, or (ii) if a Cure Objection is timely filed and served with respect to such Assigned Contract, upon the resolution of such Cure Objection in accordance with this paragraph, whether by consensual resolution documented as provided in clause (b) above or by final order of this Court determining such Cure Objection. (d) The Assigned Contract List may

be supplemented at any time during the three hundred sixty (360) day period following the applicable Closing by the filing and service of a supplemental Cure Notice on each affected counterparty, whereupon each Assigned Contract identified therein shall be deemed added to the Assigned Contract List, and the procedures set forth in this paragraph shall apply to each such supplemental Cure Notice and the Assigned Contracts identified therein; *provided* that the assumption and assignment of any such supplemental Assigned Contract shall be effective upon completion of the Cure Procedures with respect to such Assigned Contract as provided in clause (c) above. (e) Notwithstanding the occurrence of any Closing or the consummation of any Sale Transaction, all Cure Objection Deadlines and other periods set forth in this paragraph, the procedures set forth herein, and all related rights and obligations of the Debtor, the Buyers and their Buyer Designees, and the counterparties to the Assigned Contracts on the Assigned Contract List (including the obligation to pay any Cure Amount as finally determined hereunder) shall continue in full force and effect, shall survive such Closing, and shall not be extinguished, waived, or otherwise impaired thereby, until all Cure Amounts have been finally resolved and paid in accordance with this Sale Order.

21. **Cure Holdback; Use of Proceeds.** At the Closing, One Million Five Hundred Thousand Dollars ($1,500,000.00) (the "**Cure Holdback**") shall be deposited with and held by the escrow agent under the applicable APA (the "**Escrow Agent**") and shall not be released except as provided in this paragraph. Following deposit of One Million Five Hundred Thousand Dollars ($1,500,000.00) with the Escrow Agent and payment to RCF2, LLC (the "**Secured Lender**") of the Closing Date RCF Payment (as defined in the Term Sheet dated October 7, 2026, between the Debtor and the Secured Lender (the "**Term Sheet**")), consisting of (a) $15,681,217.39, *plus* (b) the Secured Lender's professional fees and expenses through the closing date (not to exceed

$600,000.00), unless otherwise increased in accordance with the Term Sheet, which shall be paid directly by the applicable Buyer to the Secured Lender by wire transfer of immediately available United States Dollars in accordance with the Term Sheet and the *Order Approving Settlement with Secured Lender RCF2, LLC* entered by this Court (the "**Settlement Order**"), all remaining cash proceeds of the Sale payable to the Debtor at each Closing (the "**Retained Sale Proceeds**") shall be deposited into and held in the Debtor's debtor-in-possession account and shall not be used or distributed except as provided in this paragraph; *provided* that, notwithstanding the foregoing, the Debtor is authorized to pay from the Retained Sale Proceeds up to $250,000 of expenses incurred by the Debtor in the ordinary course of business. The Cure Holdback shall be held by the Escrow Agent, and the Retained Sale Proceeds shall be held by the Debtor in its debtor-in-possession account, in each case until the Cure Procedures have been completed, and all Cure Amounts have been paid, with respect to all Assigned Contracts on the Assigned Contract List (including any Assigned Contracts added to the Assigned Contract List by a supplemental Cure Notice), and the Debtor has filed on the docket of the Bankruptcy Case a notice of final Cure Amounts. If the Debtor fails to pay any finally determined Cure Amount when due under this Sale Order or the applicable APA, the Escrow Agent is authorized and directed to pay such Cure Amount from the Cure Holdback directly to the applicable counterparty upon written notice from the Debtor or the applicable Buyer, and, to the extent the Cure Holdback is insufficient, the Debtor shall pay the balance of such Cure Amount from the Retained Sale Proceeds. Only upon the filing of the notice of final Cure Amounts, any remaining balance of the Cure Holdback shall be released by the Escrow Agent to the party entitled thereto under the applicable APA, and the Retained Sale Proceeds shall no longer be subject to the restrictions of this paragraph, in each case without

further order of this Court and subject to any Encumbrances attaching to such proceeds pursuant to this Sale Order.

22. **No Sub Rosa Plan.** The Sale, including the assumption and assignment of the Assigned Contracts pursuant to the APAs, does not constitute a sub rosa chapter 11 plan of reorganization or liquidation. The APAs do not impermissibly restructure the rights of the Debtor's creditors, nor do they impermissibly dictate a chapter 11 plan for the Debtor.

23. **Buyers' Standing.** The Buyers are parties in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected with this Sale Order and the Sale Transaction.

24. **Debtor's Release of Buyers.** Effective upon, and subject to the occurrence of, each Closing, the Debtor, on behalf of itself, its estate, and its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors, and assigns (collectively, the "**Seller Releasing Parties**"), hereby releases, remises, acquits, and forever discharges the applicable Buyer and each of its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors, and assigns, and each of their respective directors, managers, officers, employees, shareholders, members, partners, and contractors (collectively, the "**Seller Released Parties**"), and their respective property, from any and all claims, demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys' fees and expenses, obligations, agreements, covenants, damages, liabilities, costs, and expenses, whether known or unknown, anticipated or unanticipated, claimed or suspected, fixed or contingent, accrued or unaccrued, at law or in equity, arising out of agreement or imposed by statute or common law, including any claim by way of indemnity or contribution and including all Avoidance Actions (as defined in the applicable APA), which any Seller Releasing Party has,

may have had, or may hereafter assert against any Seller Released Party arising on or prior to the applicable Closing Date, together with any claim, right, or interest of the Debtor in the Purchased Assets, in each case as provided in Section 5.7 of the Business APA and Section 5.6 of the Software APA, as applicable, except to the extent arising under, or specifically assumed or established under, the applicable APA, this Sale Order, or any Ancillary Agreements (as defined in the applicable APA). Such release applies not only to matters presently known, suspected, or disclosed, but also to matters presently unknown, unsuspected, or undisclosed.

25. Subject to and upon each Closing, the Debtor hereby waives and releases the applicable Buyer and its property from any and all claims and causes of action relating to the Sale Transaction, whether known or unknown, contingent or non-contingent, except to the extent arising under, or specifically assumed or established under, the applicable APA, this Sale Order, or any Ancillary Agreements (as defined in the applicable APA).

26. **Debtor's Release of Secured Lender**. Effective upon each Closing, Debtor, on behalf of itself and its estate, hereby releases, remises, acquits, and forever discharges the Secured Lender and each of its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors, and assigns, and each of their respective directors, managers, officers, employees, shareholders, members, partners, and contractors (collectively, the "**RCF2 Released Parties**"), from any and all claims, demands, causes of action, disputes, defenses, controversies, suits, cross-claims, torts, losses, attorneys' fees and expenses, obligations, agreements, covenants, damages, liabilities, costs, and expenses, whether known or unknown, anticipated or unanticipated, claimed or suspected, fixed or contingent, accrued or unaccrued, at law or in equity, arising out of agreement or imposed by statute or common law, including any claim by way of indemnity or contribution and including all Avoidance Actions (as

defined in the APAs), which Debtor or its estate has, may have had, or may hereafter assert against any RCF2 Released Party arising on or prior to the Closing Date, including any claims or other challenges to RCF2's claims or any actions to disgorge any portion of the sale proceeds received or otherwise due to RCF2 at Closing. The releases in this paragraph apply not only to matters presently known, suspected or disclosed, but also to matters presently unknown, unsuspected or undisclosed, and the Debtor and its estate assumes the risk that the facts may prove to be different from those presently believed. If Debtor files a Plan, such Plan shall be consistent with this Agreement in all respects and shall include releases and exculpation provisions in favor of the RCF2 Released Parties to the maximum extent permitted by Law.

27. **Failure to Specify Provisions; Conflicts.** The failure to specifically include or reference any particular provision of the APAs or any Ancillary Agreements (as defined in the applicable APA) in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the APAs, the Ancillary Agreements, and the Sale Transaction be authorized and approved in their entirety. To the extent of any inconsistency between the provisions of this Sale Order and the provisions of the APAs or any Ancillary Agreements, the provisions of this Sale Order shall govern and control. To the extent of any inconsistency between the provisions of an APA and the provisions of any Ancillary Agreement entered into pursuant to such APA, the provisions of such APA shall govern and control.

28. **Licenses and Permits.** To the maximum extent permitted by applicable law, each applicable Buyer is authorized, as of the applicable Closing, to operate under any license, permit, registration, governmental authorization, or approval of the Debtor relating to the Purchased Assets transferred to such Buyer, and all such licenses, permits, registrations, governmental authorizations, and approvals are authorized to be transferred to such Buyer as of such Closing. To the extent an

applicable Buyer cannot operate under any such license, permit, registration, governmental authorization, or approval, such license, permit, registration, governmental authorization, or approval shall remain in effect to the maximum extent permitted by applicable law while such Buyer, with the Debtor's assistance and at such Buyer's sole cost and expense, promptly and diligently applies for and secures the necessary governmental approvals for issuance to such Buyer. No governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of the Bankruptcy Case or the consummation of the Sale Transaction to the extent such action would violate section 525 of the Bankruptcy Code; *provided* that nothing in this sentence is intended to expand the rights of any person beyond those afforded under section 525 of the Bankruptcy Code.

29. **Additional Recordation Relief.** Each federal, state, and local governmental agency or department, and each other person or entity, is authorized to accept any and all documents and instruments necessary or appropriate to consummate the Sale Transaction.

30. **Buyers' Release of Debtor.** Effective upon, and subject to the occurrence of, each Closing and the effectiveness of the release granted by the Debtor in favor of the applicable Buyer under the applicable APA, the applicable Buyer, on behalf of itself and each of its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors, and assigns, and each of their respective directors, managers, officers, employees, shareholders, members, partners, and contractors (collectively, the "**Buyer Releasing Parties**"), hereby releases, remises, acquits, and forever discharges the Debtor and its estate and each of the Debtor's past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors, and assigns, and each of their respective directors, managers, officers, employees, shareholders, members, partners, and contractors (collectively, the

"**Buyer Released Parties**"), from any and all claims, demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys' fees and expenses, obligations, agreements, covenants, damages, liabilities, costs, and expenses, whether known or unknown, anticipated or unanticipated, claimed or suspected, fixed or contingent, accrued or unaccrued, at law or in equity, arising out of agreement or imposed by statute or common law, including any claim by way of indemnity or contribution, which any Buyer Releasing Party has, may have had, or may hereafter assert against any Buyer Released Party arising on or prior to the applicable Closing Date, in each case as provided in Section 4.6 of the Business APA and Section 4.5 of the Software APA, as applicable. Such release applies not only to matters presently known, suspected, or disclosed, but also to matters presently unknown, unsuspected, or undisclosed. Notwithstanding the foregoing, such release does not release, waive, limit, impair, or otherwise affect (a) any obligation of the Debtor or its estate under the applicable APA, this Sale Order, or any Ancillary Agreements (as defined in the applicable APA), or any claim arising subsequent to the applicable Closing; (b) the obligation of the Debtor or its estate to pay all Cure Amounts and to comply with the Cure Procedures; (c) the Break-Up Fee, the Expense Reimbursement, the Deposit, or any other amount payable to or retained by the applicable Buyer under the applicable APA (each as defined in the applicable APA, as applicable); (d) any Purchased Asset or Assumed Liability; (e) any right, protection, finding, or other benefit conferred on any Buyer or Buyer Designee by this Sale Order, the Bid Protections Order, or any other order of this Court; (f) any claim arising out of fraud, intentional misrepresentation, or willful misconduct subsequent to the applicable Closing; or (g) any claim against any third party not associated with the Debtor.

31. **Surrender of Purchased Assets.** All persons and entities that are presently, or on or after the applicable Closing Date may be, in possession of some or all of the Purchased Assets are

hereby directed to surrender possession of such Purchased Assets to the applicable Buyer on the applicable Closing Date or at such time as the applicable Buyer may reasonably request.

32. **Bulk Sales.** No bulk sales law or similar law of any state or other jurisdiction shall apply to the transactions approved by this Sale Order, including the APAs and the Sale Transaction.

33. **Binding Effect.** The terms and provisions of the APAs and this Sale Order shall be binding upon and inure to the benefit of the Debtor, its estate, its creditors, the Buyers, and their respective affiliates, successors, and assigns, including all persons asserting Encumbrances (collectively, the "**Bound Parties**"), notwithstanding any subsequent appointment of a trustee, examiner, or receiver under any chapter of the Bankruptcy Code or other applicable law. Such terms and provisions shall survive the entry of any order confirming or consummating a chapter 11 plan or converting the Bankruptcy Case to a case under chapter 7, shall continue in any superseding case, and shall not be subject to rejection or avoidance by any Bound Party or any trustee, examiner, receiver, or other fiduciary appointed for the Debtor. Any trustee appointed for the Debtor is authorized and directed to perform the Debtor's obligations under the APAs and this Sale Order without further order of the Court.

34. **Notice of Closing.** Within three (3) business days after the occurrence of each applicable Closing, the Debtor shall file and serve on all parties that have requested notice in the Bankruptcy Case a notice of such Closing in form and substance reasonably satisfactory to the applicable Buyer with copies of the final version of the applicable APAs (including any amendments, but not including exhibits and schedules); provided, however, that the failure of the Debtor to file such notice shall not affect the effectiveness of this Sale Order, the findings and orders contained herein, or the effectiveness of such Closing.

35. **Retention of Jurisdiction; Miscellaneous.** The Court retains jurisdiction to interpret, implement, and enforce this Sale Order, the APAs, all amendments thereto, and all waivers and consents thereunder, and to adjudicate any dispute relating to the Sale Transaction. The provisions of this Sale Order are non-severable and mutually dependent. All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36. **Modification of Automatic Stay.** The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified solely to the extent necessary, without further order of this Court, to allow each Buyer to deliver any notices provided for in the applicable APA and to take any and all actions permitted or required by such APA in accordance with the terms and conditions thereof.

37. **Waiver of Stay.** Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or any other applicable rule, this Sale Order shall be effective and enforceable immediately upon entry, the fourteen (14) day stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived, and the Debtor and the Buyers are authorized to close the Sale Transaction immediately upon entry of this Sale Order.

38. **Service of Sale Order.** Within three (3) business days after entry of this Sale Order, the Debtor shall serve a copy of this Sale Order on all parties in interest identified in paragraph H of this Sale Order.

**END OF ORDER**

Copies to: All parties receiving notice via CM/ECF and

The Office of the United States Trustee
6305 Ivy Lane
Suite 600
Greenbelt, MD 20770

# 3C Enterprise Accounts
## Customer Health Summary - Renewals

| Account Name | CRM (new) | MSA Renewal Date | Renewal | Renewal Risk |
|---|---|---|---|---|
| Linfox | ServiceNow ITSM | 7/1/2026 | Auto Termination | Green |
| Booz Allen Hamilton | ServiceNow; ServiceNow ITSM | 8/22/2026 | Auto Termination | Green |
| Tribeam Financial | ServiceNow CSM | 8/30/2026 | Auto Renewal | Green |
| Laboratory Corp of America Holdings (Labcorp) | ServiceNow ITSM | 9/15/2026 | Auto Termination | Red |
| Thrive Networks | ServiceNow ITSM | 9/30/2026 | Auto Renewal | Green |
| FUJITSU | ServiceNow CSM | 11/4/2026 | Auto Renewal | Green |
| Leidos - GAO | ServiceNow ITSM | 12/1/2026 | Auto Termination | Yellow |
| Raymond Corporation | ServiceNow ITSM | 12/3/2026 | Auto Termination | Green |
| Bluemantis / GreenPages | ServiceNow ITSM | 12/4/2026 | Auto Renewal | Green |
| ManTech International | ServiceNow ITSM | 12/31/2026 | Auto Termination | Green |
| WTW / Willis Towers Watson | ServiceNow ITSM | 2/28/2027 | Auto Renewal | Green |
| Solugenix | ServiceNow ITSM | 2/28/2027 | Auto Renewal | Green |
| West Lancs Borough Council | ServiceNow ITSM | 3/24/2027 | Auto Renewal | Green |
| Cleveland Clinic | ServiceNow ITSM | 3/30/2027 | Auto Renewal | Green |
| IHeartMedia - 4 BUs | ServiceNow ITSM | 4/13/2027 | Auto Renewal | Yellow |
| Travelport International Operations Limited | ServiceNow ITSM | 5/1/2027 | Auto Termination | Green |
| New Signature / Cognizant | ServiceNow ITSM | 6/27/2027 | Auto Renewal | Green |
| Suffolk University | ServiceNow CSM | 7/1/2027 | Auto Renewal | Green |
| HCL | ServiceNow ITSM | 8/30/2027 | Auto Termination | Yellow |
| Coretelligent | ServiceNow CSM | 9/30/2027 | Auto Renewal | Green |
| Scholastic Corporation | ServiceNow ITSM | 3/1/2028 | Auto Termination | Green |
| Smith+Nephew | ServiceNow ITSM | 7/8/2028 | Auto Renewal | Green |
| REV Group | ServiceNow HRSD | 12/21/2028 | Auto Renewal | Green |
| Mashgin | ServiceNow CSM | 1/6/2029 | Auto Renewal | Green |
| FullyManaged | ServiceNow ITSM | 2/14/2029 | Auto Renewal | Green |
| Wincasa | ServiceNow CSM | 1/2/2028 | Auto Renewal | Green |
| Aobis | ServiceNow CSM | 12/18/2028 | Auto Renewal | Green |
| Station Casino | ServiceNow ITSM | 12/23/2028 | Auto Renewal | Green |
| Sun Country Airlines | ServiceNow ITSM | 12/12/2026 | Auto Renewal | Green |
| United Fereration of Teachers | ServiceNow ITSM | 12/22/2028 | Auto Renewal | Green |
| United Gaming | ServiceNow CSM | 12/16/2028 | Auto Renewal | Green |
| Ulta Beauty | ServiceNow ITSM & HR | 12/8/2028 | Auto Renewal | Green |
| Maine Health | ServiceNow ITSM | 6/30/2029 | Auto Termination | Green |
| Soteria | ServiceNow ITSM | | | Green |
| University of Maryland Medical Systems | ServiceNow ITSM & HR | 12/12/2028 | Auto Termination | Green |
| Focus Financial Partners | ServiceNow ITSM | 2/20/2029 | Auto Termination | Green |
| DPR Construction | ServiceNow HRSD | 2/15/2029 | Auto Renewal | Green |
| Dr Logic | ServiceNow CSM | 12/31/2028 | Auto Renewal | Green |
| ServIT Remote Solutions GmbH | ServiceNow ITSM | 9/24/2028 | Auto Termination | Green |
| Wynn America Group | ServiceNow ITSM | 4/25/2028 | Auto Renewal | Green |
| Dollar General - 3 BUs - HR Payroll - TOC - Fleet | ServiceNow CSM; ServiceNow HR | 3/31/2027 | Auto Termination | Green |
| Kyocera Document Solutions America Inc | ServiceNow ITSM | 6/29/2027 | Auto Renewal | Green |
| Nissan North America - 2 BUs | ServiceNow HRSD | 10/26/2026 | Auto Termination | Yellow |
| Denny's - 2 BUs | ServiceNow ITSM; ServiceNow CS | 1/3/2027 | Auto Termination | Red |
| Apex Systems | ServiceNow CSM | 12/4/2026 | Auto Termination | Green |
| Sonoco | ServiceNow HRSD | 3/30/2027 | Auto Renewal | Green |
| Spencer Fane | ServiceNow ITSM | 3/30/2027 | Auto Renewal | Green |
| Landis | ServiceNow CSM | 4/19/2027 | Auto Renewal | Green |
| Harvard University | ServiceNow | 5/14/2027 | Auto Termination | Green |
| Devon Energy | ServiceNow ITSM | 6/25/2027 | Auto Renewal | Green |
| TopBuild | ServiceNow ITSM | 6/26/2027 | Auto Renewal | Green |
| Dublin Airport Authority | ServiceNow CSM | 6/29/2027 | Auto Termination | Green |
| CRH | ServiceNow ITSM | 6/30/2027 | Auto Renewal | Yellow |
| AptarGroup, Inc. | ServiceNow ITSM | 7/17/2026 | Auto Renewal | Green |
| McCain Foods | ServiceNow HRSD | 8/6/2026 | Auto Renewal | Green |
| Huron Consulting Group | ServiceNow ITSM | 8/30/2026 | Auto Renewal | Green |
| Carahsoft - Tyler Junior College | ServiceNow ITSM | 8/31/2026 | Auto Termination | Green |
| Telaid | ServiceNow ITSM | 9/8/2026 | Auto Termination | Green |
| Credit Human | ServiceNow ITSM | 10/23/2026 | Auto Renewal | Green |
| Northeastern University | ServiceNow CSM | 11/2/2026 | Auto Termination | Green |
| TTI | ServiceNow ITSM | 11/10/2026 | Auto Renewal | Green |
| Sitero, LLC | ServiceNow CSM | 11/20/2026 | Auto Renewal | Yellow |
| Volt | None | 11/22/2026 | Auto Renewal | Green |
| KBR | ServiceNow ITSM | 12/13/2026 | Auto Renewal | Yellow |
| Jackson Walker | ServiceNow ITSM | 12/30/2026 | Auto Termination | Green |
| Teleflora | Microsoft Dynamics | 12/31/2026 | Auto Termination | Yellow |
| Mosaic Company | ServiceNow HRSD | 1/17/2027 | Auto Termination | Green |

| | | | | |
|---|---|---|---|---|
| Second Harvest Heartland | ServiceNow CSM | 2/21/2027 | Auto Renewal | Green |
| Aqua Comms | ServiceNow ITSM | 3/19/2027 | Auto Renewal | Red |
| Flexential Corp. | ServiceNow; ServiceNow ITSM; Se | 5/14/2027 | Auto Termination | Green |
| OneAdvanced - 2 Bus | ServiceNow CSM & TPSM | 6/10/2027 | Auto Renewal | Yellow |
| STSci- Space Telescope Science Institute | ServiceNow ITSM | 6/27/2027 | Auto Renewal | Green |
| Cole, Scott & Kissane, P.A. | ServiceNow ITSM | 8/16/2027 | Auto Renewal | Green |
| Steve Madden | ServiceNow CSM | 8/16/2027 | Auto Termination | Green |
| Kirkland & Ellis | ServiceNow ITSM | 10/12/2027 | Auto Renewal | Green |
| Astellas Pharma | ServiceNow ITSM | 10/17/2027 | Auto Renewal | Green |
| AEG Worldwide | ServiceNow ITSM | 11/9/2027 | Auto Renewal | Green |
| Sazerac | ServiceNow HRSD | 12/5/2027 | Auto Renewal | Green |
| Hunt Oil | ServiceNow ITSM | 3/27/2028 | Auto Renewal | Green |
| Yale University | ServiceNow | 5/20/2028 | Auto Termination | Green |
| MAN Truck & Bus Deutschland SE | ServiceNow ITSM | 9/18/2028 | Auto Renewal | Green |
| Hypori | ServiceNow CSM | 9/19/2028 | Auto Renewal | Yellow |
| Butler Community College | ServiceNow CSM | 9/25/2028 | Auto Renewal | Green |
| OUTFRONT | ServiceNow ITSM | 9/30/2028 | Auto Renewal | Green |
| Regeneron Pharmaceuticals, Inc. | ServiceNow HRSD | 4/9/2029 | Auto Termination | Green |
| Park Place Technologies LLC | ServiceNow CSM | 5/17/2027 | Auto Termination | Green |
| Marlink-ITC, Inc. (Formerly ITC Global, Inc.) | None | 6/27/2027 | Auto Renewal | Yellow |
| Alberta Energy Regulators | ServiceNow ITSM | 7/25/2026 | Auto Renewal | Green |
| Ingles Markets | ServiceNow ITSM; ServiceNow CS | 8/4/2026 | Auto Renewal | Green |
| American Honda Motor Co., Inc. - 2BUs | ServiceNow CSM | 8/28/2026 | Auto Termination | Green |
| Loloi, Inc. | ServiceNow CSM | 9/25/2026 | Auto Renewal | Green |
| Covered California | ServiceNow ITSM | 9/26/2026 | Auto Termination | Green |
| Granite Construction | ServiceNow ITSM | 10/4/2026 | Auto Renewal | Green |
| BJC HealthCare | ServiceNow HRSD | 10/12/2026 | Auto Termination | Green |
| ARTC | ServiceNow CSM | 10/22/2026 | Auto Renewal | Green |
| WLRK / Wachtell, Lipton, Rosen & Katz | ServiceNow ITSM | 11/10/2026 | Auto Termination | Green |
| Körber Pharma Software | ServiceNow ITSM | 11/26/2026 | Auto Renewal | Yellow |
| Sentara Healthcare | ServiceNow ITSM | 12/10/2026 | Auto Renewal | Green |
| State of South Dakota - 9 BUs | ServiceNow ITSM; ServiceNow CS | 12/15/2026 | Auto Renewal | Green |
| North Mississippi Health Services (NMHS) | ServiceNow ITSM | 12/28/2026 | Auto Termination | Green |
| Hyatt Corporation - 2 BUs | ServiceNow ITSM; ServiceNow CS | 1/22/2027 | Auto Renewal | Green |
| Suffolk Construction | ServiceNow ITSM | 2/1/2027 | Auto Renewal | Green |
| Avendis (Formerly BSH/ Allgeier IT Solutions) | ServiceNow ITSM | 2/18/2027 | Auto Renewal | Green |
| Carahsoft - General Dynamics IT - Americorps | None | 2/21/2027 | Auto Termination | Green |
| 7-Eleven - 11 BUs | ServiceNow ITSM; ServiceNow CS | 3/25/2027 | Auto Renewal | Green |
| University of Wisconsin Hospitals and Clinics Authority - UW Health | ServiceNow ITSM | 3/30/2027 | Auto Renewal | Green |
| Carahsoft - California State University Bakersfield | ServiceNow ITSM | 4/5/2027 | Auto Termination | Green |
| Pediatrix Medical Group (aka PMG Services, Inc.) - 3 BUs | ServiceNow ITSM; ServiceNow CS | 4/14/2027 | Auto Renewal | Green |
| Net Impact Strategies | ServiceNow ITSM | 4/27/2027 | Auto Termination | Green |
| Carahsoft - Smithsonian Institution - 2 BUs | None; ServiceNow ITSM | 4/30/2027 | Auto Renewal | Green |
| Carahsoft - State of Delaware | ServiceNow CSM | 6/1/2027 | Auto Termination | Green |
| Franciscan Alliance Inc | ServiceNow ITSM | 8/25/2027 | Auto Renewal | Yellow |
| InEight - 2 BUs | ServiceNow ITSM; Salesforce | 12/3/2027 | Auto Renewal | Green |
| Thales | ServiceNow ITSM | 12/11/2027 | Auto Termination | Green |
| SBB | ServiceNow CSM | 10/30/2029 | Auto Termination | Green |
| Dominion Energy Services Inc | ServiceNow | 9/30/2026 | | Green |
| Astreya Partners, LLC | ServiceNow ITSM | 7/22/2028 | Auto Renewal | Green |
| Tallahassee State College | ServiceNow ITSM; ServiceNow CS | 9/11/2028 | Auto Renewal | Green |
| Club Car Wash | ServiceNow CSM | 5/15/2029 | Auto Renewal | Green |
| Hillpointe Corporate Management, LLC | ServiceNow ITSM; ServiceNow CS | 11/3/2028 | Auto Renewal | Green |

**2026 YTD**

| CRITICAL | Vendor | Sum of Amount paid | | | |
|---|---|---|---|---|---|
| X | Amazon Web Server - Prod | 997,210.00 | Hosting | COGS | |
| X | Nuwave Communications | **333,386.40** | Telecom | COGS | |
| X | Bandwidth, Inc. | **274,664.33** | Telecom | COGS | |
| X | Observe.AI (Z-Labs) | 313,815.25 | Resell | COGS | |
| X | CareFirst, Inc. Employer | 206,142.30 | Healthcare Prov. | Payroll | |
| X | CareFirst, Inc. Employee Deduction | 88,346.70 | Healthcare Prov. | Payroll | |
| | ServiceNow, Inc. | 254,950.00 | Conferences | Mkg | |
| | Deel, Inc. | 241,947.04 | Sales (contractors) | Sales | INCLUDED IN SALES/EMPLOYEE INSIGHTS |
| X | Amazon Web Server - QA | 240,000.00 | Hosting | COGS | |
| | Anrok | 108,196.89 | Sales Tax | G&A | |
| | Cherry Bekaert | 81,544.15 | CPA | G&A | |
| X | Upwork | 80,164.00 | Support Contractors | G&A | INCLUDED IN SUPPORT /EMPLOYEE INSIGHTS |
| X | Amazon Web Server - Dev | 60,000.00 | Development | R&D | |
| X | Voxbone | 58,187.00 | Telecom | COGS | |
| | Rimon Law | 56,178.25 | Legal | G&A | |
| | Ideascrafters | 55,649.03 | Contractor - Mkg | Mkg | INCLUDED IN MKG /EMPLOYEE INSIGHTS |
| X | Sycurio | 50,822.27 | Resell | COGS | |
| X | TATA Communications, Inc. | 48,814.48 | Telecom | Telecom | |
| | Embrace Project Management, Inc. | 41,536.00 | Contractor - PS | Pro. Serv. | INCLUDED IN PS /EMPLOYEE INSIGHTS |
| X | Atlassian | 40,792.00 | Software | R&D | |
| X | Klimonas/DID Logic | 40,000.00 | Telecom | Telecom | |
| X | Google | 39,231.00 | Communications | G&A | |
| X | Anthropic | 36,175.00 | AI | R&D | |
| X | Deepgram, Inc. | 33,825.85 | AI | R&D | |
| X | QXIP BV (Gigapipe) | 29,115.63 | Monitoring | R&D | |
| X | Okta, Inc. | 26,921.70 | Compliance | G&A | |
| | Level Access | 26,000.00 | Accessibilty | COGS | |
| | Laurentian CFO Services LLC | 25,376.30 | Contract CPA | G&A | INCLUDED IN G&A /EMPLOYEE INSIGHTS |
| | Namely, Inc. | 21,288.12 | Software-HR | G&A | |
| X | Sage | 21,087.00 | Software - Accounting | G&A | |
| | Jumpcloud | 20,873.00 | Compliance | G&A | |
| | Capital Search group LLC | 20,000.00 | Recruting | G&A | |
| | Hubspot | 19,474.00 | Lead gen | Mkg | |
| | Barr Advisory | 17,000.00 | Compliance | G&A | |
| X | Zoom Technologies LLC (Conference Calling) | 15,857.08 | Communications | G&A | |
| X | Cyara Ireland Ltd (formerly Spearline Labs Ltd) | 15,058.77 | Software | R&D | |
| | Salesforce | 13,943.00 | Software | Sales | |
| | Maxwell Locke & Ritter LLP | 13,500.00 | Q of E | G&A | |
| | IPFS Corporation | 13,195.93 | Insurance | G&A | |
| X | Orcawave | 12,900.00 | Telco Sofware | R&D | |
| X | Textel | 12,755.63 | SMS | COGS | |
| | Launch Workplaces | 11,184.00 | Rent | G&A | |
| X | Github | 10,964.00 | Repository | R&D | |
| | LinkedIn | 10,551.00 | Marketing | Mkg | |
| X | Krisp Technologies, Inc | 10,300.00 | Software | R&D | |
| | Thrive Operations LLC | 10,000.00 | | Mkg | |
| | KnowBe4 | 9,739.68 | Compliance | G&A | |
| | Zoom | 9,494.00 | Communications | G&A | |
| X | RedSky Technologies, Inc. | 9,451.28 | 911 | R&D | |
| | ZoomInfo Technologies LLC (DataBase) | 8,931.50 | Lead Gen | Mkg | |
| | Blueally | 7,916.00 | Software | R&D | |
| | FIRST UNUM LIFE INSURANCE COMPANY | 7,592.10 | Insurance | G&A | |
| X | Sage Intacct | 7,029.00 | Software - Accounting | G&A | |
| | CodeRabbit | 6,822.00 | Software | R&D | |
| X | Eleven Labs--Eleven Labs Inc | 6,798.00 | Software | R&D | |
| X | Cekura | 5,880.00 | Software | R&D | |
| | Cohen & Co | 5,609.00 | Tax Services | G&A | |
| | Lucid Software | 5,041.00 | Software | R&D | |
| | Public Storage | 4,747.00 | Storage Unit | G&A | |
| | SAP SE | 4,161.39 | Sotware | G&A | |
| X | Digital Ocean | 4,144.00 | Hosting | COGS | |
| X | OpenAI | 3,893.00 | Software | R&D | |
| | Murphy Law | 3,811.00 | Immigration lawyer | G&A | |
| | Target Defense, Inc | 3,500.00 | Support | R&D | |
| | Cursor | 3,341.00 | Software | R&D | |
| | Cubesmart | 2,701.00 | Storage Unit | G&A | |
| | Pump Software | 2,626.00 | Software | R&D | |
| | Cision US Inc. | 2,276.88 | PR | Mkg | |
| | Pinecone | 1,990.00 | | Mkg | |
| | Ubiquity (401K) | 1,935.00 | 401K Plan | G&A | |
| | CSC | 1,841.40 | | G&A | |
| | GlideFast Consulting | 1,223.67 | Referral Fee | Sales | |
| | Logrocket | 1,074.00 | Support | COGS | |
| | Postmark | 852.00 | | G&A | |
| | Bennett Thrasher LLP | 525.00 | | G&A | |
| | Incloud, LLC | 390.00 | | | |
| | Pagerduty | 353.00 | | G&A | |
| | HireRight | 233.52 | | G&A | |
| | | 4,294,845.52 | | | |
| | | 533,019.07 | | | |
| | Total Vendors Cost | 3,761,826.45 | | | |

LAUNCH WORKPLACES

## Base Terms

| Licensor ('us', 'we' or 'our'): | Licensee ('you', or 'your'): |
|---|---|
| Launch Workplaces LLC<br>TBC - Gaithersburg Offices, LLC<br>TBC - Rockville Offices, LLC, | 3CLogic<br>dseynhaeve@3clogic.com |

| | |
|---|---|
| **License Start Date:** | 9/16/2024 |
| **Initial Term:** | 12 month |
| **Offices(s):** | Private Office #5 Suite 500; Private Office #8 Suite 500 |
| **Monthly Office Fee:** | $3,600.00 |
| **Monthly Service(s):** | Security Deposit |
| **Monthly Service(s) Fee:** | $0.00 |
| **Total Monthly Fee:** | $887.67 (Pro-rated September #8; $1,800.00 starting October) $1,800.00 (September #5) |
| **One - Time Refundable Retainer:** | $1,800.00 ($1,800.00 on file) |
| **Early Termination Notice Period required prior to end of Initial Term:** | 2 months |
| **Auto - Renewal Period should Notice not be provided:** | Auto-Renew/Same Term |
| **Addendum Terms / Special Terms:** | One year contract starting 9/24, then going month-to-month |
| **Total Due at Signing:** | (September's Month's Rent + Refundable Retainer) $887.67 + $1,800.00 + $1,800.00 = $4,487.67 |

By signing this Agreement you confirm that you understand the Base Terms listed above, form part of and are governed by the License for the above property.

By signing this Agreement you confirm that if you choose to pay by credit card you are accepting any applicable processing fees. You also confirm that services will not be activated until you add either a credit card with auto pay selected via your client portal or an ACH form has been submitted immediately following completion of this agreement. ACH is Launch Workplaces preferred payment method. If you wish to pay via ACH, please request the form from Launch Staff. Checks should be payable to: Launch Workplaces

| Launch Workplaces LLC | | 3CLogic | |
|---|---|---|---|
| Our signature: | Kim Wright | Your signature: | [signature] |
| Print name: | Kim Wright | Print name: | Denis A Seynhaeve |
| Date: | 09 / 06 / 2024 | Date: | 09 / 06 / 2024 |

LAUNCH WORKPLACES

## Monthly Breakdown of Agreed Upon Charges

| Rent | Monthly Fee |
|---|---|
| Sep 2024 | $1,800.00 |
| Sep 2024 | $887.67 |
| Oct 2024 | $3,600.00 |
| Nov 2024 | $3,600.00 |
| Dec 2024 | $3,600.00 |
| Jan 2025 | $3,600.00 |
| Feb 2025 | $3,600.00 |
| Mar 2025 | $3,600.00 |
| Apr 2025 | $3,600.00 |
| May 2025 | $3,600.00 |
| Jun 2025 | $3,600.00 |
| Jul 2025 | $3,600.00 |
| Aug 2025 | $3,600.00 |
| Sep 2025 | $3,600.00 |
| Oct 2025 | $1,775.34 |

| Services | Qty | Monthly Fee |
|---|---|---|
| | | $0.00 |

**Subject to market rate increase upon agreement renewal with sixty (60) days notice provided by Launch Workplaces.**

**Private Office Members - Conference rooms require reservations and all-inclusive services are based on a reasonable use policy. Launch Workplaces may revoke or restrict all-inclusive services at any time if usage is deemed excessive or inappropriate.**

By signing this Agreement below, you confirm that you have read, understood and agree to abide by the terms and conditions attached to the License. You understand that violation of the rules may result in a termination of your License Agreement.

| Launch Workplaces LLC | | 3CLogic | |
|---|---|---|---|
| Our signature: | Kim Wright | Your signature: | [signature] |
| Print name: | Kim Wright | Print name: | Denis A Seynhaeve |
| Date: | 09 / 06 / 2024 | Date: | 09 / 06 / 2024 |

LAUNCH WORKPLACES

## Terms and Conditions - Location Specific
## (Please Click on Your Location below or via PDF attachment)

**MARYLAND:**
Launch Workplaces Gaithersburg - https//launchworkplaces.info/termsconditions-gb
Launch Workplaces Rockville - https//launchworkplaces.info/termsconditions-rv
Launch Workplaces Bethesda Crossing - https//launchworkplaces.info/termsconditions-bx
Launch Workplaces Edgewater - https://launchworkplaces.info/termsconditions-ew

**WASHINGTON DC:**
Launch Workplaces Glover Park - http//launchworkplaces.info/termsconditions-gp
Launch Workplaces Navy Yard - https//launchworkplaces.info/termsconditions-navyyard
Launch Workplaces the Ring Building - http//launchworkplaces.info/termsconditions-trb
Launch Workplaces Watergate - https//launchworkplaces.info/termsconditions-watergate

**OHIO:**
Launch Workplaces Crocker Park - http//launchworkplaces.info/termsconditions-cp

Dropbox Sign

# Audit trail

| | |
|---|---|
| Title | Operate licence 'Private Offices #5 & #8 Suite 500' |
| File name | e11w1cn3.jw3.pdf |
| Document ID | 1ea66857ba126102090eccdd640d95af169407e8 |
| Audit trail date format | MM / DD / YYYY |
| Status | Signed |

**This document was signed on hellosign-us.essensys.tech**

## Document history

| | | |
|---|---|---|
| SENT | **09 / 06 / 2024**<br>21:08:02 UTC+1 | Sent for signature to Denis Seynhaeve (dseynhaeve@3clogic.com) and Kim Wright (kwright@launchworkplaces.com) from us-development@essensys.tech<br>IP: 54.84.29.90 |
| VIEWED | **09 / 06 / 2024**<br>21:19:02 UTC+1 | Viewed by Denis Seynhaeve (dseynhaeve@3clogic.com)<br>IP: 208.127.183.99 |
| SIGNED | **09 / 06 / 2024**<br>21:20:23 UTC+1 | Signed by Denis Seynhaeve (dseynhaeve@3clogic.com)<br>IP: 208.127.183.99 |
| VIEWED | **09 / 06 / 2024**<br>21:22:43 UTC+1 | Viewed by Kim Wright (kwright@launchworkplaces.com)<br>IP: 204.48.37.223 |
| SIGNED | **09 / 06 / 2024**<br>21:24:03 UTC+1 | Signed by Kim Wright (kwright@launchworkplaces.com)<br>IP: 204.48.37.223 |
| | **09 / 06 / 2024**<br>21:24:03 UTC+1 | The document has been completed. |

Dropbox Sign

# Audit trail

| | |
|---|---|
| **Title** | Operate licence 'Private Offices #5 & #8 Suite 500' |
| **File name** | e11w1cn3.jw3.pdf |
| **Document ID** | 1ea66857ba126102090eccdd640d95af169407e8 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was signed on hellosign-us.essensys.tech**

## Document history

COMPLETED